

**Signed and Filed: September 01, 2010**

_____
**DENNIS MONTALI
U.S. Bankruptcy Judge**
_____

UNITED STATES BANKRUPTCY COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| In re<br>DOLPHIN REAL ESTATE NO. 1,<br>                      Debtor.<br>_____<br>JANINA M. ELDER, Trustee in Bankruptcy,<br>                      Plaintiff,<br><br>v.<br><br>LAWRENCE E. PELZNER; HUGO DE HOYOS; FRANCES LOW; LAURA FLORES; MICHAEL CHALHOUB; PETER LOMMORI; FRANK VENTO; CHRISTINE STAHL; LARRY MUELLER; MIKE FOOR; RICO BAUTISTA; HIRMA GARABEDIAN;<br>                      Defendants.<br>_____ | Bankruptcy Case<br>No. 09-30205DM<br><br><br>Chapter 7<br><br>Adversary Proceeding<br>No. 09-3176DM |

MEMORANDUM DECISION ON MOTIONS FOR SUMMARY JUDGMENT

At the hearing on August 27, 2010, counsel for defendants argued that the principal theory on which he relies to support judgment for his clients is the idea that the Independent Contractor Agreement manifests an intent to create a lien that cannot be defeated by the trustee. He relies primarily on <u>In re Pacific Far East Line, Inc.</u>, 654 F. 2d 664 (9th Cir. 1981)("PFEL"), which in turn drew upon <u>Isrin v. Superior Court of Los Angeles County</u>, 63 Cal. 2d 153 (1965).

-1-

While defendants' counsel had not abandoned alternative theories of constructive or resulting trusts, the court commented that those were not persuasive arguments, and took the matter under advisement to review Isrin and PFEL, and also to permit the parties to explore settlement.

The parties have advised the court that this matter will not be settled. Accordingly, the court issues its ruling, denying defendants' motion for summary judgment and granting the trustee's counter-motion.

First, Isrin is not about liens, equitable, express or otherwise. The court was confronted with the question of whether an in forma pauperis plaintiff needed to advance jury fees when her contingent fee attorney presumably was solvent and had the economic means to advance those costs. In ruling for the plaintiff, the California Supreme Court overturned a contrary court of appeal decision (Gomez v. Superior Court (1933) 134 Cal. App. 19), holding that "the right to proceed in forma pauperis in appropriate cases may not be denied on the ground that counsel for the indigent plaintiff is representing [her] pursuant to a contingent fee contract." 63 Cal. 2d at 165.

Notwithstanding Isrin's specific and seemingly irrelevant (to the matter before the court) holding, PFEL is binding and this court must follow it if its holding applies.

In PFEL an attorney convinced the Ninth Circuit that his prepetition legal work under a contingent fee contract, representing 95% of the entire effort necessary to obtain a $10 million cash settlement (along with other consideration), was secured by a lien on the fund that had been created by his

Case: 09-03176    Doc# 25    Filed: 09/01/10    Entered: 09/02/10 10:24:17    Page 2 of 5

efforts. The reasonable value of his prepetition services were not questioned; rather the creditors committee wanted the claim relegated to prepetition unsecured status.

Here the sequence of events is different, and defendants are defending payments they received rather than seeking to be paid, but the analysis is similar. Defendants' efforts took place during the unsuccessful Chapter 11 case. The trustee wants to recover post conversion (to Chapter 7) payments made to them; she does not question the reasonableness of their claims or that if surrendered to her, they would support unsecured Chapter 11 expenses of administration.

The <u>PFEL</u> court sustained the attorney's claim of a lien on the fund, first noting that California does not recognize a common law attorneys' charging lien. 654 F. 2d at 668 (internal citations omitted). Rather, interpreting <u>Isrin</u>, the court instructed that the intent of the parties determines the type of claim an attorney may assert against a fund the attorney's efforts created. <u>Id</u>., at 669. ("In essence, *Isrin* holds that if the parties intend that the attorney look directly to the settlement for payment, then a lien against that settlement is created in the attorney's favor." <u>Id</u>.)

The court then referred to the district court's determination that the attorney was entitled to look to the fund he had helped create, and thus was entitled to an equitable lien. Such a determination necessarily included a finding of requisite intent, even without use of the term "lien." This finding was itself supported by the evidence: the attorney had been hired, and the first attorney terminated, because of the inability of the debtor

Case: 09-03176    Doc# 25    Filed: 09/01/10    Entered: 09/02/10 10:24:17    Page 3 of 5

to pay fees "except from a fund generated by the litigation." Id.

This court is unwilling to extend this principle to the situation before it, namely real estate agents' claims of lien on funds received by their broker upon close of escrows handled through the debtor's brokerage. First, PFEL is about a contingent fee arrangement between an attorney and a financially constrained client. Of course, Isrin's dictum is about an indigent litigant's relationship with her contingent fee attorney. There is nothing in either case suggesting that a lien will be implied outside of the attorney-client relationship.

Looking to the Independent Contractor Agreement, there is no expressed or implied grant of a lien. If fact, there is a disclaimer of any relationship between the broker and the agent except as an independent contractor. And there is nothing that suggests or implies that the agent is to be treated specially because of any financial limitations of the broker. While the right to a real estate commission is certainly almost always dependent (perhaps even contingent) upon escrow closing and the commission being paid by the seller and shared among participating brokers and their respective agents, that arrangement has nothing in common with the contingent nature of the fee for the attorney who gambles his or her efforts on a litigation matter in an attempt to recover a percentage of the recovery. The two businesses - contingent fee attorney and real estate broker - have little in common and certainly not enough to extend the PFEL lien approach as defendants argue.

Finally, the very language of the Independent Contractor Agreement undermines defendants' theory. Paragraph 3(c) directs

the broker to transmit the agents' share of any commission, but allows the broker, by incorporation of Paragraph 6, to deduct fees and other charges otherwise owing by the agent. This is inconsistent with any lien or trust theory of recovery. Similarly, the final sentence of Paragraph 3(c) allows the broker to pay referral fees or shared commissions from commissions received by it. Plainly the relationship between the broker and the agent is one of debtor-creditor.

The debtor received its commission revenue and deposited it its general bank account. In the normal course of business it then paid agents their share of earned commissions. Those shares, from receipt of the commission until payment of the agent's share, represented unsecured obligations of the debtor. This case is not governed by the Ninth Circuit's PFEL decision, and is more like the situation presented in <u>Oxford Management, Inc. v. Chiasson</u>, 4 F. 3d 1329 (5th Cir. 1993).

Accordingly, payments to defendants after conversion to Chapter 7 were unauthorized transfers of estate property that can be recovered by the plaintiff trustee under Bankruptcy Code § 549. She is entitled to summary judgment in her favor. Counsel for plaintiff should serve and upload an order denying defendants' motion and granting her counter-motion, and a judgment against defendants for each of their respective post conversion transfers that are the subject of this action.

***END OF MEMORANDUM DECISION***

-5-

Case: 09-03176    Doc# 25    Filed: 09/01/10    Entered: 09/02/10 10:24:17    Page 5 of 5